Argued September 16, affirmed November 14, petition for rehearing denied December 10, 1969.  Petition for review denied by Supreme Court February 26, 1970

STATE OF OREGON, *Respondent, v.*
BOB GENE OLAND, *Appellant.*
461 P. 2d 277

Francis W. Linklater, Eugene, argued the cause and filed the briefs for appellant.

Michael E. Murphy, Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief were Stephen H. Keutzer, Deputy District Attorney, and John B. Leahy, District Attorney, Eugene.

SCHWAB, C. J.

Defendant was indicted and upon jury trial found guilty of receiving and concealing a stolen automobile in violation of ORS 165.045. A 1965 Buick was stolen from the lot of a Portland dealer on December 29 or 30, 1966. This car was found by police on a used-car lot in Springfield, Oregon, in April of 1967. At the time it was found, the car had on it license plates and a serial number identification plate taken from a different 1965 Buick, the same model as the stolen car. The substituted license plates and serial number plate came from a 1965 Buick which had been sold to one Michael Milam after it had been wrecked. Milam, appearing as a witness for the prosecution, testified that he had sold the license plates, the serial number plate and the certificate of title from the wrecked

car to the defendant for $500 in November or early December of 1966. Other witnesses for the state testified that in January of 1967, the defendant obtained a loan from a finance company by giving a security interest in the stolen automobile, and, thereafter, in March of 1967, the defendant sold the stolen car to a used-car dealer, where it was subsequently discovered by the police. At both the time of the loan and the time of the sale, the stolen car bore the substituted license plates and serial number plate, and, in both instances, the defendant used the certificate of title which corresponded to the substituted identification.

The defendant denied the transaction to which Milam had testified. On the contrary, he testified that Milam had told him that a man named Monte had a 1965 Buick for sale and that on January 12, 1967, accompanied by a woman named Jan King, he met Monte at a club and purchased the automobile in question from him. His testimony was corroborated by Jan King. The defendant's brother testified that in the month of January he had driven the defendant to look at a car at the place where defendant said he had first met Monte and inspected the automobile prior to purchasing it.

Milam was the state's key witness. The trial was hard-fought. The main thrust of the defense was an attempt to discredit Milam and the prosecution. Questions and comments by the defense, designed to accomplish this purpose, were answered in kind by the state, and these exchanges gave rise to the bulk of the several assignments of error.

■ Milam's testimony that he had charged $500 for the license plates, serial number plate and certificate of title, probably did not encourage the jury to look

upon him as a man of high moral standards. Nevertheless, the defense sought to further discredit him on cross-examination by asking frequent questions about other such transactions, which questions Milam refused to answer because of the possibility of self-incrimination. The defense then questioned him as to whether the prosecution had made any pre-trial promises to him. Milam denied that any promises had been made by the state and volunteered that he was not worried about being prosecuted. On re-direct examination, he was asked what the police and personnel of the district attorney's office had told him before trial. Over the objection of defense that the question would elicit hearsay, he was allowed to answer, and said, "To tell the truth." The ruling on this objection is the basis of the first assignment of error. The court properly overruled the objection.

"* * * [T]he contention that improper hearsay was admitted is based on the trial court's permitting one of the witnesses to testify on redirect examination that the district attorney had advised him to tell the truth when testifying. On cross examination, counsel for defense had asked the witness if he had discussed the case with anyone, and the witness had answered that he had discussed it with the police officers investigating the case, and with the district attorney that morning. The purpose of the district attorney's questioning was to rebut any unfavorable inferences which might have been drawn from the cross examination. This he had an unqualified right to do [citing cases]. The evidence was not offered as substantive proof of the crime but only to rebut some inferences that the witnesses' testimony had been suggested by the district attorney. As such, the evidence was clearly admissible." *Abeyta v. People*, 156 Colo 440, 442-43; 400 P2d 431, 432 (1965).

To the same effect see *Utley v. City of Independence,* 240 Or 384, 402 P2d 91 (1965), and *State v. Kendrick,* 239 Or 512, 398 P2d 471 (1965).

On re-direct examination, prosecution asked Milam if he was worried about prosecution and then asked, "Are you worried about something?" He was permitted to answer this question over objection of defense counsel and his answer was that he was worried about the defendant. When asked why, he said, "I'm just worried about him." Defense argues that under *State of Oregon v. Day,* 22 Or 160, 29 P 352 (1892), it was error to permit Milam to so testify in the absence of evidence that the defendant had given Milam cause to be worried. In light of subsequent decisions of our Supreme Court, we do not construe *State of Oregon v. Day,* supra, as authority supporting defendant's contention.

When prejudicial evidence is offered, its relevancy is to be weighed against its tendency to produce prejudice. *State v. Harrison,* 253 Or 489, 455 P2d 613 (1969); *State v. Flett,* 234 Or 124, 127, 380 P2d 634 (1963); *State v. Freeman,* 232 Or 267, 374 P2d 453 (1962), cert. den. 373 US 919, 83 S Ct 1310, 10 L Ed 2d 418 (1963); *State v. Kristich,* 226 Or 240, 244, 359 P2d 1106 (1961), 235 Or 1, 383 P2d 380 (1963). This rule is applicable to evidence relevant only to the credibility of the witness. *State v. Hancock,* 245 Or 240, 421 P2d 687 (1966). The weighing process is for the trial judge and his decision will not be disturbed in the absence of an abuse of discretion. *State v. Hancock,* supra. In the case at hand, there had been an attempt to discredit the witness Milam by showing that he might be testifying to receive benefits from the prosecutor. It was therefore rele-

vant to the credibility of Milam to show that he was not testifying to his benefit, but, rather, was testifying against his own interest as he saw it, because he was worried about the defendant. We cannot say that the trial judge abused his discretion in finding that the relevancy outweighed any prejudicial effect that the testimony was likely to produce.

■ Defendant contends that the trial court erred in reprimanding his counsel in the presence of the jury. Detailed records of the loan transaction between the defendant and the finance company were brought into court and offered into evidence. The prosecutor objected to putting into evidence that portion of the file which was not relevant and the court agreed with him. During the colloquy concerning this file, the following took place in the presence of the jury:

> "MR. LINKLATER: * * *.
> "* * *.
>
> "Mr. Keutzer said that he had no objection to the material which related to this transaction. If he does now, and will indicate which portions he doesn't want the jury to know about, I will offer that.
>
> "THE COURT: Now, that's not a fair statement, Mr. Linklater, what portions he doesn't want the jury to know about. If he were to make your statement about that you would move for a mistrial."

At this point, defense counsel did move for a mistrial and the trial judge properly denied it. The gratuitous advice to the jury that the prosecution was "hiding" evidence was couched in terms neither subtle nor original. A trial judge has not only the power, but the duty to do more than keep time and speak only when

spoken to. Here, the trial judge, exercising a proper function, did only what was reasonably necessary "to clear the air."

The defense's closing argument in large part was an attempt to show that the witness, Milam, was a "big operator in the stolen-car business." During his rebuttal argument the prosecutor referred to the witness as being a "little fish in a big operation." At that time, the defense made no objection. At the conclusion of the argument, the defendant moved for a mistrial on the ground that this statement was improper and argues here that it was reversible error for the court to fail to grant the motion.

■ We need not consider whether the motion for a mistrial was timely. The counsel for defense had attacked the witness in argument. The remark of the prosecutor was in direct response to this argument and was within the limits of fair advocacy. "* * * Counsel have a right to make * * * reply to that [argument] made by opposing counsel, and, in doing so, statements may be made which otherwise would be improper * * *." *Malone v. United States,* 94 F2d 281, 288 (7th Cir), cert. den. 304 US 562, 58 S Ct 944, 82 L Ed 1529 (1938), quoted in *United States v. Doyle,* 234 F2d 788, 796 (7th Cir), cert. den. 352 US 893, 77 S. Ct 132, 1 L Ed 2d 87 (1956). Further, taken in the context of the arguments as a whole, it appears that the jury understood that the prosecutor was referring to the witness and was not trying by innuendo to implicate the defendant in other car thefts.

■ However, assuming for the sake of argument, that the prosecutor's comments were prejudicial to defendant, the instructions of the trial court were suf-

ficient to correct any prejudicial effect. The court instructed the jury:

> "Part of one of the attorneys' arguments in this case might have been understood as suggesting that the defendant had been involved in other transactions similar to the one charged in the Indictment. There was no evidence introduced in this case from which such an inference could be made, and you are not to speculate upon any such possibility."

The jury is presumed to have followed the court's instruction. *State v. Roberts,* 249 Or 139, 437 P2d 731 (1968).

■ Defendant assigns as error the court's failure to instruct the jury that the testimony of accomplices should be viewed with caution. We need not consider whether such an instruction should have been given, because there was no request for it. *State v. Anderson,* 242 Or 585, 411 P2d 259 (1966).

■ Defendant also assigns as error the failure of the trial court to grant defendant a new trial based on newly-discovered evidence. Newly-discovered evidence which will justify a court's granting a new trial must be such as will probably change the result if a new trial is granted. *State v. Ellis,* 232 Or 70, 89, 374 P2d 461 (1962); *State v. Davis,* 192 Or 575, 579, 235 P2d 761 (1951).

To support his motion for a new trial, defendant offered affidavits of several persons which tended to show that in February 1967, a man named Monte was attempting to sell a 1965 Buick similar to or identical to the stolen automobile. He also offered an affidavit of the witness, Milam, which disclosed that Milam had given Monte's name and telephone number

to the defendant in February 1967. The defendant contends that these affidavits corroborate his testimony that he had purchased the automobile from Monte without knowledge that it was stolen.

■ However, by his own testimony, defendant had purchased the automobile January 12, 1967, and did not dispose of it until March. If Monte was attempting to sell a 1965 Buick in February it must have been a different automobile or he must have been attempting to sell the stolen automobile for the defendant. Neither theory would be helpful to defendant at a new trial.

We do not believe it probable the evidence described in the affidavits would change the result if a new trial were granted. The motion was properly denied.

Affirmed.