Argued May 18, affirmed June 21, reconsideration denied July 28, petition for review allowed September 1, 1976
See 276 Or 527, 555 P2d 443

# STATE OF OREGON, *Respondent,*

*v.*

# EDWARD EUGENE ALLEN, *Appellant.*

## (No. 75-1733-C-2, CA 5783)

### 551 P2d 120

*Robert A. Boyer,* Medford, argued the cause for appellant. With him on the brief were Boyer & Putney, Medford.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

FOLEY, J.

## FOLEY, J.

Defendant was convicted after trial by jury of first degree burglary. The court suspended imposition of sentence for three years on condition that defendant be supervised by the Oregon Corrections Division, pay a $2,500 fine and make restitution to his victim. On appeal defendant asserts three assignments of error.

At least two persons burglarized the Pioneer Club in Central Point, Oregon, taking money from vending-type machines and a safe. The safe was found afterwards, minus contents, in the Rogue River. Tire marks at the scene corresponded to those on defendant's pickup. Two state police officers testified that defendant orally admitted to them his part in the burglary. Defendant took the witness stand in his own behalf and denied making any admission of complicity in the burglary to the officers. At the same time he affirmed that he had made admissions similar to those testified to by the officers, but had made them in a joking manner.

■ Since the focal issue in the case was whether defendant had, in fact, admitted being a participant in the burglary, defendant excepted to the following instruction given by the court which said:

> "I further instruct you that the confession given by the defendant * * * in this case could not be used in any prosecution of [another participant] in the future."

Defendant contends that the trial judge by implication instructed the jury that the defendant did, in fact, confess his complicity in the burglary to the police offiiers. However, in reviewing an instruction excepted to, we must consider the instructions given as a whole. *State v. Patton,* 208 Or 610, 303 P2d 513 (1956); *State v. Livingston,* 2 Or App 587, 469 P2d 632 (1970). Prior to giving the instruction complained of here, the court had carefully explained the tentative nature of the "asserted confession":

> "Now, there has been evidence admitted concerning an asserted confession by the defendant. The confession

must be disregarded unless, by weighing the evidence, you conclude that it (1) was made, and (2) was made voluntarily. In deciding these two issues, you must not consider the truth or falsity of the confession.

"If you find that a voluntary confession was made, you are the exclusive judges as to whether or not the contents of the confession are true. In deciding that question you should consider all of the evidence connected with the making of the statement.

"There is a presumption that confessions are not voluntarily made. The State must prove that the asserted confession was voluntarily made."

In context we find no error in the instruction objected to. Taken as a whole the instructions made it clear that the existence of a confession, its voluntariness and its truthfulness were issues for the jury.

After the defendant had rested his case, the state called two witnesses, one of whom testified that the reputation of one of the testifying officers for truth and veracity in the community was good. The other witness testified similarly as to the other officer. Defendant objected to the testimony of the first witness, but not the second. The trial judge overruled the objection, stating that the defendant had raised the issue. Defendant contends on appeal that the admission of this evidence was error in the absence of either an attack on the officers' credibility or impeachment of their testimony. The state contends that the credibility of the officers was implicitly impugned by defendant's attempt to show that the officers were not being truthful in testifying that defendant's "confessions" were serious admissions by defendant of his participation in the crime charged.

■ In Oregon evidence of a witness' reputation for truthfulness has been held inadmissible where the witness has merely been contradicted by an opposing witness. *State v. Louie Hing,* 77 Or 462, 151 P 706 (1915), citing *Osmun v. Winters,* 25 Or 260, 35 P 250 (1894). Here not only did the defendant factually contradict the officers' testimony but, at least impliedly,

he attempted to impeach their testimony by attacking their truthfulness.

In situations such as this, we think the "more sensible view" suggested by McCormick should be followed. This approach allows the trial court the discretion to decide whether the apparent impeachment or conflict in testimony amounts in net effect to an attack on the character for truth of the officers. We quote McCormick's analysis of the problem:

"Attempts to support the witness by showing his good character for truth have resulted in contradictory conclusions when the witness has been impeached by evidence of an inconsistent statement, or has been met by the adversary's evidence denying the facts to which the witness has so testified. If the witness has been impeached by the introduction of an inconsistent statement, the greater number of courts permit a showing of his good character for truth, but if the adversary has merely introduced evidence denying the facts to which the witness testified, the greater number of courts will not permit a showing of the witness's good character for truth.

"Convenient as automatic answers to these seemingly minor trial questions may be, surely it is unrealistic to handle them in this mechanical fashion. *A more sensible view is the notion that the judge should consider in each case whether the particular impeachment for inconsistency and the conflict in testimony, or either of them, amounts in net effect to an attack on character for truth and should exercise his discretion accordingly to admit or exclude the character-support.*" (Footnotes omitted.) McCormick, Evidence 104-105, § 49 (2d ed E Cleary 1972) (Emphasis supplied).

Here, the trial court appears to have followed McCormick's commonsense approach when it said the defendant had "raised the issue." The court's comment indicates that it recognized that defendant had attempted to impliedly impeach the officers' truthfulness. We conclude that the trial court did not abuse its discretion in admitting the reputation testimony.

Finally, defendant contends that the court should

have granted a mistrial as the result of a certain statement made by the prosecutor. The statement was preceded by defense counsel's asking the defendant if he had at any time been called before the Jackson County Grand Jury. Defendant responded in the affirmative and counsel for the state objected with the following statement:

> "[PROSECUTING ATTORNEY]: Grand Juries are confidential, and they are self-serving, and he is going to testify what he said there. My recollection is that he was in fact called on another matter, another burglary involving another individual."

The following colloquy then ensued:

> "[DEFENSE COUNSEL]: I ask that be stricken.
>
> "[PROSECUTING ATTORNEY]: I am stating the grounds for my objection.
>
> "[DEFENSE COUNSEL]: Your Honor, I am going to ask for a mistrial. Mr. Smith had no right to put this before this Jury, and it is not in evidence.
>
> "THE COURT: I am going to deny the motion but disregard, Ladies and Gentlemen, the whole testimony and comments about the Grand Jury. That has no place in your deliberations as to whether this defendant is guilty or not guilty of the crime that he is being tried for. It very well could be that he was a witness in which he was totally innocent himself, but was a witness for some other purpose, so it wouldn't be appropriate to consider that."

■ Defendant did not renew his motion for mistrial after the curative instruction. In any event, it is questionable that a jury would construe the prosecutor's remarks as a reference to another crime committed by defendant, as contended by defendant. Even if the remarks were considered a reference to another crime, any prejudicial effect resulting therefrom was adequately corrected by the court's cautionary instruction. *State v. Doolin,* 251 Or 56, 444 P2d 541 (1968). *See also State v. Oland,* 1 Or App 272, 279-80, 461 P2d 277 (1969), Sup Ct *review denied* (1970).

Affirmed.

**SCHWAB, C. J.,** dissenting.

Two police officers testified as to the substance and apparent seriousness of defendant's alleged confession. Defendant then testified about a different version of the conversations, and claimed they had occurred in obvious jest. The prosecution then called a deputy district attorney and another attorney who were allowed to testify that the police officers had a good reputation for veracity in the community.

This was error under ORS 45.620 and the Oregon cases interpreting that statute, primarily *State v. Louie Hing,* 77 Or 462, 151 P 706 (1915). ORS 45.620 provides that "[e]vidence of the good character * * * of a witness" is not admissible "until the character of the witness has been impeached." In *State v. Louie Hing,* the Supreme Court stated:

> "* * * To warrant evidence of the good character of a witness, there must have been evidence tending to impeach the character of that witness, and evidence of contradictory statements will not suffice * * *. To permit the introduction of evidence of good character every time a witness is contradicted by an opposing witness would cause delay and multiply the issues in almost every controversy presented in court * * *." 77 Or at 467-68.

This language is particularly applicable to this case, i.e., if the prosecution was entitled to present evidence of the good character of its witnesses, then the defendant, in turn, would have been entitled to present evidence of his good character. A trial conducted in this manner might never end.

It is not completely clear to me what type or degree of impeachment is necessary to trigger admissibility of evidence of an impeached witness's good character. *See, Sheppard v. Yocum and DeLashmutt,* 10 Or 402, 3 P 824 (1883) (impeachment by prior inconsistent statements insufficient to warrant introduction of character evidence). It is clear to me that under cases like *Louie Hing* and *Sheppard* the "impeachment" of the

police officers in this record was not of the quantity or quality that the Supreme Court has found essential to justify the subsequent introduction of character evidence.

When there are Oregon Supreme Court decisions on point, I do not think this court is free to go to treatises or other authorities in search of a "more sensible" rule than that adopted by the Supreme Court.[1]

I respectfully dissent.

---

[1] *State v. Gibbens,* 25 Or App 185, 188, 548 P2d 523 (1976) (Schwab, C.J., specially concurring); *State v. Abbott,* 24 Or App 111, 115, 544 P2d 620 (Schwab, C.J., dissenting), Sup Ct *review allowed* (1976); *State v. Derryberry,* 17 Or App 262, 275, 521 P2d 1065 (Schwab, C.J., dissenting), *reversed* 270 Or 482, 528 P2d 1034 (1974); *Stroh v. SAIF,* 6 Or App 628, 488 P2d 844 (1971), *reversed* 261 Or 117, 492 P2d 472 (1972).