Argued and submitted September 20, affirmed November 30, (1983), reconsideration denied January 6, petition for review denied March 20, 1984 (296 Or 638)

# STATE OF OREGON,
*Respondent,*

*v.*

# THOMAS LYNN McCARTNEY,
*Appellant.*

(82 1175; CA A26760)

672 P2d 1210

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals his conviction for felony driving while suspended (DWS). ORS 487.560(6). He makes four assignments of error: denial of two motions for mistrial; denial of a motion for judgment of acquittal; and the imposition of a felony rather than a misdemeanor conviction. We affirm.

The arresting officer testified that he stopped defendant's car and ran a "records check." The prosecutor asked, "And * * * what information did you gain from the records check?" The officer answered, "Our dispatcher came back on the radio and explained that [defendant] was suspended as an habitual offender." Defense counsel objected and moved for a mistrial. The trial judge sustained the objection and took the motion under advisement. At the close of the trial the motion for mistrial was denied. The judge found that the reference to defendant's habitual offender status had no "meaningful adverse impact" on the jury and that the comment had not "affected the defendant's case," when the issue in that case "turned out being whether the jury felt or found that the [emergency] affirmative defense applied." The issue is whether the trial court abused its discretion when it denied the motion.

A mistrial need be granted only "when it is apparent that some aspect of the conduct of the trial has interfered with the defendant's ability to obtain a fair adjudication of the facts." *State v. McFarland,* 30 Or App 93, 97, 566 P2d 539 (1977). The officer's comment concerning defendant's habitual offender status was unsolicited, and *no further reference was made to it during the trial.* Defendant declined a curative instruction, and we find no abuse of discretion.

A second motion for mistrial was made when the officer testified that he asked defendant if he was aware that his license had been revoked, and defendant declined to answer. Comment by the prosecution on a defendant's silence when such comment permits an inference of guilt contravenes the Fifth and Fourteenth Amendments to the United States Constitution. *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965). If there is little likelihood that any inference adverse to defendant could be drawn by the jury, reference to defendant's exercise of a constitutional right is not prejudicial error. *See State v. Williams,* 49 Or App 893,

897, 621 P2d 621 (1980), citing *State v. Smallwood*, 277 Or 503, 561 P2d 600 (1977); *State v. Nulph*, 31 Or App 1155, 572 P2d 642 (1977). In the present case, lack of notice or knowledge of the suspension was not an issue.[1] Defendant testified that he knew he was suspended. The motion was properly denied.

■■    Defendant asserts that it was error to deny his motion for judgment of acquittal. He argues that he established an affirmative defense of emergency under ORS 487.560(2)(a) by an "unrebutted preponderance of the evidence." The state is not required to disprove an affirmative defense to sustain a guilty verdict; defendant must prove it. ORS 161.055(2); *State v. Caswell*, 53 Or App 693, 698, 633 P2d 24, *rev den* 292 Or 108 (1981). A motion for judgment of acquittal based on an affirmative defense may only be granted when there are no facts presented upon which "reasonable men could differ." *State v. Smith*, 21 Or App 270, 280, 534 P2d 1180 (1975).

■    To establish an emergency defense, a defendant must show that "[a]n injury or immediate threat of injury to human or animal life and the urgency of the circumstances made it necessary for defendant to drive a motor vehicle * * *." ORS 487.560(2)(a). Defendant testified that he had gone with a friend to a baseball game that lasted longer than he had anticipated. He had promised to milk his grandfather's goats, which required regular milking. When defendant's friend refused to leave the game, he borrowed his friend's car to go to milk the goats.

■    The state's evidence was that the goats were milked after defendant called his sister from the jail and that the goats were not injured by the late milking. Further, defendant had a passenger in the car who had a driver's license. It was a jury question whether an emergency necessitated defendant's driving.

Finally, defendant contends that the trial court should have imposed a conviction for misdemeanor DWS. Defendant's argument has two parts: first, he argues that his status as an habitual offender is an element of the crime of

---

[1] Actual knowledge is not an element of driving while suspended. ORS 487.560(1). It may be relevant if the defendant raises the affirmative defense of failure to receive notice. ORS 487.560(2)(b); 487.560(2)(d).

felony DWS that the state failed to plead and prove; and, second, that, if the state is not required to plead and prove his habitual offender status, then use of the status to enhance the penalty is unconstitutional, because that status is based on a civil proceeding without the benefit of a jury trial.

ORS 487.560(1)[2] sets out the elements of driving while suspended. ORS 487.560(6)[3] provides for enhancing the penalty from a Class A Misdemeanor to a Class C Felony. In *State v. Allen,* 30 Or App 275, 567 P2d 552 (1977), we explained that ORS 487.560(6) merely enhances the penalty; it is not a separate crime. To avoid prejudice to the defendant during trial, prior convictions are raised only at the sentencing stage. Although a determination that a person is an habitual offender is not a criminal conviction, *see State v. Renteria,* 59 Or App 619, 651 P2d 1362 (1982); *State v. Rhoades,* 54 Or App 254, 634 P2d 806, *rev den* 292 Or 232 (1981); *State v. Wells,* 27 Or App 537, 540, 556 P2d 727 (1976), the purpose of the separate sentencing process, to avoid prejudice to the defendant, remains the same. Here, the information alleged that defendant did "feloniously drive a motor vehicle." That was adequate notice that he was charged with an enhanced penalty offense. *State v. Allen, supra.*

---

[2] ORS 487.560(1) provides:

"A person commits the crime of driving while suspended or revoked if the person drives a motor vehicle upon a highway during a period when the person's license or permit to drive a motor vehicle or the person's right to apply for a license to drive a motor vehicle in this state has been suspended or revoked by a court or by the division or if the person drives a motor vehicle outside the restrictions of a license issued under ORS 482.475 or 482.477."

[3] ORS 487.560(6) provides:

"Driving while suspended or revoked is a Class C felony if the suspension or revocation was the result of a finding that the person is an habitual traffic offender under ORS 484.730 or of a conviction for any of the following offenses:

"(a) Any degree of murder, manslaughter, criminally negligent homicide or assault resulting from the operation of a motor vehicle.

"(b) Any crime punishable as a felony with proof of a material element involving the operation of a motor vehicle.

"(c) Failure to perform the duties of a driver involved in an accident or collision which results in physical injury or death to any person.

"(d) Reckless driving.

"(e) Fleeing or attempting to elude a police officer.

"(f) Driving while under the influence of intoxicants."

■    We also determine that using defendant's habitual offender status to elevate his conviction to a felony does not violate his right to a jury trial guaranteed under Article I, sections 11 and 16, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. ORS 484.705(1)(a) defines as an habitual offender a person who either has been convicted or has forfeited bail on at least three major traffic offenses or crimes involving operation of a motor vehicle within a five-year period.[4] Once a driver has three such convictions, the Division of Motor Vehicles certifies the record to the district attorney, who files a complaint. ORS 484.720. The court then issues a show cause order directed to the defendant, ORS 484.725, who then has the burden to prove that the driving record entries are incorrect or that he is not the driver named. ORS 484.720(1).

■    Defendant was determined to be an habitual offender after he was convicted of two DUII charges and two DWS charges within five years. He claims that he should have had a jury trial on the issue of whether he was an habitual offender. Because he did not, he claims a right to a jury when ORS 487.560(6) is used to enhance the penalty for DWS. Defendant does not dispute that he was given all the procedural rights provided criminal defendants by the state and federal constitutions in the DUII and DWS prosecutions underlying his habitual offender status. Using those convictions to enhance the DWS penalty does not violate his constitutional right to a jury trial.[5]

Affirmed.

---

[4] Our analysis is limited to ORS 484.705(1)(a) and does not concern enhancement when habitual offender status is based on infractions under ORS 484.705(1)(b).

[5] It is worth mentioning that each of the two DUII convictions individually support the enhanced penalty under ORS 487.560(6)(f), even without a determination of habitual offender status.