Argued and submitted September 26, 1990, affirmed January 23, reconsideration denied April 24, petition for review denied June 20, 1991 (311 Or 433)

# STATE OF OREGON,
*Respondent,*

*v.*

# ALFRED LYNN SIMS,
*Appellant.*

(C 88-12-37982; CA A61476)

804 P2d 1205

Laura Graser, Portland, argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his convictions for manslaughter in the first degree, ORS 163.118, conspiracy to commit murder, ORS 161.450, conspiracy to commit assault in the first degree, ORS 161.450, two counts of assault in the second degree, ORS 163.175, and carrying a deadly weapon with intent to use it unlawfully. ORS 166.220. We affirm.

On August 16, 1988, a group of young men drove a car by the Columbia Villa playground, an area that they knew was frequented by rival gang members. After a verbal encounter and exchange of hand signals, they drove away. Later that afternoon, they drove by the same area again. After another exchange, someone from the playground shot at the car, puncturing a tire. They again left the area. Defendant was not in the car during those encounters. That evening, the persons involved in those encounters and defendant met at defendant's grandmother's house. They obtained several guns, including three or four from defendant. Defendant borrowed a car from a girlfriend. Just after midnight, they left the house in two vehicles. Defendant drove the car with three passengers past the playground. The passengers fired into the playground, killing one person and injuring two. A bullet entered a living room of a nearby house and barely missed a resident.

Defendant first argues that the trial court abused its discretion by admitting in evidence an immunity agreement between a prosecution witness and the state. The witness had been a passenger in the other vehicle. In the agreement, a document of three and one-half pages, the witness agreed to testify "fully, honestly, and truthfully." Defendant objected to the introduction of the agreement on the ground that it was irrelevant and inadmissible. However, he did not identify any specific portion of the agreement that was objectionable.

An objection to evidence as a whole is insufficient if any part of the evidence objected to is admissible. *State v. Brown,* 310 Or 347, 800 P2d 259 (1990); *Brown v. J. C. Penney Co.,* 297 Or 695, 704, 688 P2d 811 (1984); *State v. Madison,* 290 Or 573, 580, 624 P2d 599 (1981). Defendant is correct that the "truthfulness" portion of the immunity agreement was irrelevant. *State v. Eby,* 296 Or 63, 673 P2d 522 (1983). However, the remainder of the agreement was relevant to show the witness's bias. It was permissible for the state to offer the

evidence in anticipation of the defendant introducing it. *State v. Eby, supra,* 296 Or at n 5. Because portions of the agreement were relevant, the objection to the admission of the entire agreement was not sufficient to preclude its admission.

■ Defendant's second assignment of error concerns statements that he made to an officer who had escorted him from a pre-trial hearing. Apparently, defendant was then pleased because his confession had been suppressed. He told the officer, "I don't know how they can get me on no murder. I was just driving the car." Before the officer testified, defendant objected to any evidence of the circumstances in which the statement was made. The trial court ruled that the evidence of the circumstances was admissible but that the state could not offer evidence that defendant was "cocky."

Defendant concedes that the statement was voluntary and admissible but argues that the court erred in allowing testimony about the circumstances under which the statement was made. First, he contends that the court should not have allowed evidence that he was in custody. However, assuming without deciding that it was error for the jury to hear that defendant was in custody, it was not prejudicial. While cross-examining an earlier witness, defendant had already elicited testimony that he was in jail during that period.

Defendant next argues that, because the trial court allowed the jury to speculate on what basis he had prevailed, the trial court should not have allowed testimony that he had won an earlier motion. The officer testified that a motion or hearing had "gone [defendant's] way" immediately before he had made the statement. We conclude the trial court did not abuse its discretion by permitting the reference to the outcome of the earlier hearing.

Defendant also argues that the state violated the trial court's ruling that the officer could not testify that defendant was "cocky." The officer described defendant as "swaggering and he had kind of a half smile on his face." However, even if the admission of that testimony was inconsistent with the trial court's ruling, we conclude that it was very unlikely to have changed the result of the trial and is not reversible error. *State v. Mains,* 295 Or 640, 664, 699 P2d 1112 (1983).

■ The third assignment of error concerns the testimony of Officer Crannell, who testified about gang organization, hand signals, terminology, dress and location. Defendant moved to suppress all evidence of gang activity. The trial court ruled that the state could offer "something about the background of what gangs are," but could not present evidence relating to drug trafficking. Defendant argues that the evidence went beyond the scope of the court's ruling and that it was prejudicial to him.

It is unnecessary to decide whether the admission of that testimony was error because, even if it was, it was harmless. First, much of Crannell's testimony was duplicated by other witnesses, without objection. More importantly, as defendant acknowledges, any unfair prejudice from the admission of this evidence could only have occurred when the state emphasized it in closing arguments. As defendant states:

"Permitting this testimony by itself was error, but perhaps not reversible error. However, it was a prelude to the state's closing arguments."

■ Defendant moved for a mistrial on the basis of the prosecutor's comments in closing arguments about the evidence relating to gang activities. He argues that the trial court abused its discretion in denying the motion. In his closing argument, the prosecutor said:

"What significance is there about the gangs and the gang affiliation? Are they just a bunch of young people that are going around wearing red clothes, maybe using some phrases, maybe doing some hand signs? Are we talking about high school or college pranks? No, ladies and gentlemen. We are talking about a philosophy of violence. We are not just talking about saying a few words. This is a philosophy of violence.

"You heard Office Crannell testify. This is a violence that feeds on itself. It perpetuates itself. We are the Bloods, we will sneak into Crip territory to see if we can get away. If the Crips see us and shoot at us we can come back that night and we can shoot at the Crips. It goes on and on and on.

"This is not some game. It was not a game to the Veres' as they were sitting in their home that night a .41 caliber slug comes flying in the window a foot from Mrs. Veres' head. Was that just a slogan? This is a philosophy of violence."

Defense counsel did not object to those comments but instead

emphasized the subject himself by arguing that the dress and behavior of the gang members were merely characteristic of harmless youths:

> "I think you can relate back to the days when you were in high school and probably some of you were the guys that wore ducktails or they wore longer hair at another period of time and they had various handshakes and they called them hoods and they would maybe act like Hell's Angels or something like that. To come across in a place where you do things that make you look like you are playing the role or acting smart is not uncommon for somebody 17, 18 or 19 years old. I think you can relate to that. Even though you don't have proof of it and you wouldn't like your child to be acting like that but it is not uncommon in that age group."

In his closing argument, the prosecutor said:

> "Counsel also continues to refer to this as being this gang activity as being the high school fad, just some kids running around saying certain slogans, you know, remember back when somebody else wore a ducktail. Gangs are not a fad. You heard the testimony of Officer Crannell. These are very real problems in this community. You can see the extent to which they are a problem by this defendant's identification with these gangsters from California and otherwise. He is idolizing the concept of murder and violence. Isn't that a real problem?

> "It is a very real problem, ladies and gentlemen. This boy is dead. This is not a movie. This is not a movie where we cut away and he gets up and walks away. This is for real. It is done in the name of gangs. It was done by him and his friends.

> "This is a very serious problem. This is not some high school fad."

Only after the conclusion of the arguments and completion of jury instructions, did defendant move for a mistrial.

The trial court did not abuse its discretion in denying a mistrial. Even if the prosecutor's comments in closing argument could be considered unduly inflammatory, defendant did not object to them at the time they were made. A timely objection would have allowed the trial court to take action to correct any harm. *State v. Shafer,* 222 Or 230, 235, 351 P2d 941 (1960); *State v. Smallwood,* 5 Or App 245, 250, 481 P2d 378, *rev den* (1971). Rather than objecting in his response, defendant accepted the tone set for the arguments and cannot now plausibly argue that the jury drew an improper inference from the

prosecutor's remarks. *State v. Pirouzkar,* 98 Or App 741, 746, 780 P2d 802 (1989), *rev den* 309 Or 333 (1990). Any unfair prejudice from the evidence of gang activities would have resulted from the emphases in both sides' closing arguments. Its admission, if error, was therefore harmless.

Affirmed.