Argued and submitted June 29, 1994, affirmed May 10, petition for review denied
September 5, 1995 (321 Or 560)

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES MICHAEL GURITZ,
*Appellant.*

## (91-12-36889; CA A78190)

894 P2d 1235

David E. Groom, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his sodomy conviction, assigning error to the introduction of testimony about defendant's involvement in a marijuana purchase and to the trial court's denial of his motion to dismiss on the ground that the prosecutor commented on defendant's decision to remain silent during questioning by a detective. We affirm.

We first address defendant's assignment concerning the admission of evidence of the marijuana purchase, viewing the evidence in the light most favorable to the state. *State v. Harris*, 126 Or App 516, 518, 869 P2d 868, *mod* 127 Or App 613, 872 P2d 445, *rev den* 319 Or 281 (1994).

In 1991, the victim, defendant's five-year-old daughter, complained to her mother that, during a visit with defendant the previous year, defendant had touched her vagina with his tongue and that defendant had told her not to tell anyone about it. The authorities investigated. Ultimately, defendant was interviewed by Detective McDonald. McDonald read defendant's *Miranda* rights and defendant signed a form acknowledging that he had been informed of those rights. After a brief discussion, defendant said "Well, I'm going to invoke my right to remain silent and my right to an attorney." McDonald ceased questioning defendant.

At trial, defendant denied engaging in sodomy with his daughter. He testified that, during the visit she described, his daughter was feverish and very sweaty, that he had to dry her with a towel and change her clothes, and that she apparently misunderstood his acts.

Defendant argued, among other things, that he was not the sort of father who would commit sodomy on his daughter. He testified that he and his daughter's mother had decided that they would jointly provide daytime care for their child, and that he stayed at home to do so for about four years. Explaining his role, defendant testified:

"Q. And what did you do with [your daughter] when you say that you raised her?

"A. Well, I changed her diapers and took her to the park and like what any father would do, you know, for his daughter. We went to the malls a lot and just everywhere I'd go, she'd go."

Defendant testified that, even after he and the mother separated, he continued to provide day care for their daughter, while the mother worked. Eventually, defendant obtained other employment and, for the next two years, saw his daughter on alternate weekends. He described his relationship with his daughter at that time:

"Q. From July of 1989 until Labor Day of 1991, what type of visitation did you have?

"A. Well, I got [my daughter] about once or twice a month. Usually on weekends, Friday I'd pick her up or Saturday and then take her home after church Sunday.

"Q. What types of things did you do with [your daughter]?

"A. Well, we went to a lot of malls and we went to the parks and we — about that, you know, on rainy days we stayed home and we had coloring books and we both colored together."

Defendant also testified about an occasion in which his daughter was upset when he could not take her to the park.

At that point, out of the presence of the jury, the prosecutor requested a ruling on the admissibility of evidence concerning the fact that, when defendant took his daughter to the park, he completed drug transactions. Over defendant's objections, the trial court found and concluded as follows:

"Well, I'm inclined to allow that testimony. It would appear that it does go directly to contradict what the defendant's testimony was per — pertaining to what he did — you spent a lot of time on what he did with the child growing up, taking care of her.

"And it certainly was intended to show that he's a — a — he was a good dad. That he did everything — that in fact, he was a better dad than she was a mom, in a sense, because he was the one taking care of this child * * *.

"* * * * *

"I think [the prosecutor] is correct that this goes directly to contradict his testimony concerning his characterization of what he did with this child and why — what his motivations were.

"As a matter of fact, in the report it — it specifically refers to his having left her in the playground — I don't know how far away it was, but it suggests that he left her — a two-and-

a-half year old child in the playground to go down and purchase drugs below and that certainly is — is relevant to how he cared for this child as he was assisting in her upbringing.

"* * * * *

"I think that marijuana, while it certainly — marijuana use is certainly prejudicial, I don't think that the prejudicial value outweighs the probative value in this instance. Particularly, where the door was opened.

"[U]nder the circumstances, no, I don't think that it is so prejudicial that it outweighs the probative value."

The prosecutor then cross-examined defendant concerning his activities at the park. Defendant admitted during that cross-examination that, on one occasion, he had been cited for purchasing marijuana at Washington Park, that his daughter was with him in the car when he did that, and that he often came to the park just to purchase marijuana.

In closing, defendant continued to press, among other things, his "good father" defense, concluding with a request that the jury consider whether the state had proven "that [defendant] is the type of father that would sodomize his daughter." The jury convicted defendant of first degree sodomy.

On appeal, defendant argues that, because his testimony did not clearly put his character in issue, the trial court erred in permitting the state to introduce evidence of his marijuana purchase at the park. The state contends that defendant "opened the door" to the prosecutor's questions by putting on his "good father" defense, in general, and describing the benevolent purposes of his trips to the park with his daughter, in particular.

OEC 404(2) provides, in part:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

The gist of that rule is that a defendant may choose to offer evidence of his or her own character, but at some risk: The

state may cross-examine a defendant or introduce other character evidence to rebut a defendant's testimony. *See generally* Laird C. Kirkpatrick, *Oregon Evidence* 140-41 (2d ed 1989). There are limitations that apply. A defendant may only introduce evidence of a "pertinent trait" of character, and whether a trait is pertinent depends on the nature of the crime charged. *State v. Bailey,* 87 Or App 664, 667, 743 P2d 1123 (1987). The state may offer such evidence only if the defendant has "clearly" put his or her character in issue. *State v. Hayes,* 117 Or App 202, 205, 843 P2d 948 (1992), *rev den* 316 Or 528 (1993). We review the trial court's rulings allowing such evidence for abuse of discretion. *Id.* at 206.

■     In this case, defendant does not argue that he did not testify as to a trait of character that is "pertinent" to the crime charged. Instead, his only argument is that his testimony did not clearly put his character in issue. According to defendant, this case is controlled by our decision in *Hayes.* In that case, the defendant was charged with sodomizing one of his granddaughters. In response to a question on cross-examination, the defendant testified that he had never been "mean" to any of his children or grandchildren. Over the defendant's objection, the state then introduced evidence of the defendant's sexual molestation of two of his daughters and two other granddaughters. We held that, although the trial court has discretion to determine whether a defendant has opened the door to such rebuttal evidence, in that case, the defendant's testimony was not precise enough to be subject to rebuttal. *Id.*

The facts of this case, however, are different. There is not merely a single, ambiguous statement elicited on cross-examination. Instead, there is extended testimony from defendant that he was a "good father" to his daughter. Indeed, a significant part of defendant's case was that he was such a good father that it is not conceivable that he would have committed the acts of sodomy for which he was charged. Counsel argued repeatedly in opening statement that defendant loved his daughter and she loved him, and that he was not the sort of person who would commit sodomy on his daughter. Defendant then testified on direct examination about his loving care for his daughter, about his participation in family gatherings, about his trips to the mall, and about his

time spent with his daughter coloring in coloring books on rainy days. In that context, defendant testified about the times he spent taking his daughter to the park, and the fact that she came to look forward to those activities. The clear implication of that testimony was that defendant was such a caring father that he could not have committed sodomy on his daughter. In closing argument, in fact, counsel for defendant asserted precisely that defense, asking the jury to consider whether the state had proven "that [defendant] is the type of father that would sodomize his daughter."

Under the circumstances, we cannot say that the trial court abused its discretion in finding that defendant had put in issue his character clearly enough to warrant the state introducing rebuttal evidence. The trial court did not err.

We next consider defendant's assignment of error concerning the prosecutor's comments in summation. During the course of the trial, the prosecutor elicited testimony from Detective McDonald concerning the substance of his interview with defendant, before defendant terminated the meeting by invocation of his *Miranda* rights. Counsel for defendant briefly cross-examined McDonald on the same topic. Before closing arguments, the trial court cautioned the prosecutor that any references to the interview with McDonald be "extremely limited," and that there should be no comment as to who terminated the interview unless counsel for defendant raised the issue.

The prosecutor closed with no comment about the interview. Defense counsel then argued that the state failed to investigate adequately the charges against defendant. He argued that investigators should have talked to other family members and that they should have asked a host of additional questions. He then directed his attention at the quality of McDonald's interview with defendant, and of the prosecutor's examination of the detective:

"We heard from the — Detective McDonald. He said, 'I asked [defendant] about it and he denied it.' [The prosecutor] may get up and say to you '[defendant] never told the detective that the child was sick that night. He never told the detective that he had to carry her upstairs and towel her down.' [The prosecutor] never asked the detective what he told [defendant].

"'* * * * *

"Did Detective McDonald tell him the date of the alleged abuse? We don't know. Tell him when, what, where? We don't know."

In rebuttal, the prosecutor stated:

"Members of the jury, that document is in evidence and you will have it, and it says that anything that the defendant says to that detective can be used in court. And the importance of that fact, when the defendant read it and he signed it, having told the detective that he knew already what the allegations were, the importance of that fact when he was told that, 'Anything you say can be used in court,' as if he has got some explanation, that that's a chance to give it.

"'* * * * *

"[I]f there is something that he needs to tell that's important about that night, that's his chance.

"And members of the jury, he did not tell those facts."

Defendant moved for a mistrial on the ground that the prosecutor impermissibly commented on defendant's invocation of his constitutional right to remain silent. The trial court denied the motion.

On appeal, defendant urges that the trial court should have granted the motion for a mistrial, because the prosecutor improperly commented on defendant's invocation of his *Miranda* rights. The state argues that the court did not err, because defense counsel opened the door to that line of argument when he commented on the inadequacy of McDonald's investigation, which was cut short by defendant's own action. Defendant, the state argues, cannot have it both ways in criticizing the lack of depth of the interview and objecting to the introduction of any evidence as to why that occurred.

Because the trial court is in the best position to assess the potential prejudice to defendant and to rectify it, the determination whether to grant a mistrial is committed to the sound discretion of the trial court. *State v. Rogers*, 313 Or 356, 381-82, 836 P2d 1308 (1992), *cert den* ___ US ___, 113 S Ct 1420 (1993). In determining whether a mistrial should have been declared, we review for abuse of that discretion.

*State v. Pratt*, 316 Or 561, 574, 853 P2d 827, *cert den* ____ US ____, 114 S Ct 452 (1993).

■■    Comment by the prosecutor on a defendant's silence when such comment permits an inference of guilt ordinarily is improper. *State v. Mullenburg*, 112 Or App 518, 521, 829 P2d 98 (1992); *State v. McCartney*, 65 Or App 766, 768, 672 P2d 1210 (1983), *rev den* 296 Or 638 (1984). The prosecutor has the right, however, to reply to argument made by opposing counsel, and, in doing so, statements may be made which otherwise would be improper. *State v. Oland*, 1 Or App 272, 279, 461 P2d 277 (1969), *rev den* (1970); *see also State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den* 498 US 879 (1990).

■    In this case, we cannot say that the trial court abused its discretion. Defense counsel did put the state in the position of having to defend the brevity of McDonald's interview without saying that it was defendant who cut it short by invoking his constitutional right to proceed no further. Defense counsel effectively precipitated the prosecutor's remarks, and, under the circumstances, defendant now should not be heard to complain of the consequences. *See Richmond v. Fields Chevrolet Co.*, 261 Or 186, 202-04, 493 P2d 154 (1972); *State v. Sims*, 105 Or App 318, 323-24, 804 P2d 1205, *rev den* 311 Or 433 (1991); *State v. Pirouzkar*, 98 Or App 741, 746, 780 P2d 802, *rev den* 309 Or 333 (1989). The trial court did not err.

Affirmed.