Argued and submitted June 28, affirmed October 11, reconsideration denied
November 17, 1989, petition for review denied February 6, 1990 (309 Or 333)

# STATE OF OREGON,
*Respondent,*

*v.*

# MAHIN PIROUZKAR,
*Appellant.*

(10-82-06549, 10-82-06550;
CA A47948 (Control), A47949)
(Cases Consolidated)

780 P2d 802

Sally L. Avera, Deputy Public Defendant, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals from felony convictions for unlawfully obtaining public assistance. ORS 411.630. She assigns as error the trial court's denial of her motions to dismiss for failure to prosecute timely and the denial of her motion for a mistrial because of statements made by the prosecutor during closing arguments. We affirm.

Defendant was indicted in August, 1982, for offenses alleged to have occurred in August and October, 1981. Arrest warrants were issued at that time. In October, 1982, the warrants were entered in local, regional and national law enforcement computer systems that are intended to inform any officer running a routine records check that warrants for defendant's arrest were outstanding. An unsuccessful attempt to serve the warrants was made in March, 1983, at defendant's last known address. The officer found the residence vacant. Defendant was finally arrested in California in September, 1987, after she had received a traffic ticket. She had been living in California from the summer of 1983 until her arrest.[1]

A prosecution for a felony other than murder or manslaughter must be commenced within three years after its commission. ORS 131.125(2)(a). A prosecution is commenced when a warrant is issued, provided that the warrant is executed without "unreasonable delay." ORS 131.135.

In *State v. Barnes,* 66 Or App 896, 626 P2d 344 (1984), we held that Statutes of Limitation such as ORS 131.135

"provide notice to the accused of the decision to prosecute and the general nature of the charge so as to allow the accused to prepare evidence and to minimize the prejudice produced by the passage of time." 66 Or App at 898.

In determining whether the delay in *Barnes* was reasonable under ORS 131.135, we relied on *State v. Jackson,* 228 Or 371, 365 P2d 294 (1961), where the Supreme Court stated:

"While it is impracticable to attempt a precise definition of the phrase 'a reasonable time,' it may be stated generally that

---

[1] In support of defendant's motion to dismiss for failure to prosecute timely, defendant submitted an affidavit in which defense counsel stated that defendant moved to California in the summer of 1983. However, at trial, defendant testified that she moved to California in October, 1982.

it is such length of time as may reasonably be allowed or required having regard to attending circumstances." 228 Or at 377. (Citations omitted.)

Here, defendant was charged with

"unlawfully and knowingly obtain[ing] public assistance * * * by means of false representation and fraudulent device * * * [and] by failing to immediately notify the Adult and Family Services Division * * * of the receipt of income and other change of circumstances which directly affected the eligibility for and the amount of the public assistance to which the defendant was entitled * * *."

The major issue was whether defendant had access to or the right to control a certificate of deposit of more than $10,000. As a result, the evidence was primarily documentary in nature. Because that was the issue and because the warrant information was entered into the law enforcement computer systems two and one-half months after the warrants were issued, we fail to see how the seven-month delay between the issuance of the warrants in August, 1982, and the unsuccessful attempt to serve them in March, 1983, was unreasonable.

■■ Further, the more than four-year delay between the unsuccessful attempt to serve defendant in March, 1983, before she moved to California in the summer of 1983, and her arrest in California in September, 1987, was not unreasonable. The state did not know where she lived and had already entered the warrant information into the law enforcement computer systems. In fact, defendant was living in California during most of that time.[2]

---

[2] Defendant relies on the facts in *State v. Barnes, supra,* in support of her argument that the delay was unreasonable. In *Barnes,* the arrest warrant was executed two years and nine months after it was issued. The state was aware of the defendant's Portland address but took no action to further the prosecution for two years and seven months. We held that, under the circumstances, the delay was unreasonable. *Barnes* is distinguishable from this case. Here, the state had no knowledge of defendant's whereabouts after March, 1983, seven months after the issuance of the warrants. Further, by entering the warrant information into the law enforcement computer systems two and one-half months after the warrants were issued, the state took action to further the prosecution.

Contrary to what defendant argues, ORS 131.145(2)(a) and ORS 131.155 are inapplicable here. Those statutes provide that, when the accused is not an inhabitant or usual resident of Oregon, the normal period of limitation to commence a prosecution is tolled, except that in no case may the period be extended more than three years. Those statutes operate only to extend the period of time within which a prosecution may be commenced. They set no time limit within which an issued warrant must be executed.

■ ■ Finally, defendant argues that the trial court erred when it denied her motion for a mistrial, which she based on statements made by the prosecutor in his closing and rebuttal arguments. In his rebuttal argument, the prosecutor compared defendant and her attorney to the scenario in the novel *Anatomy of a Murder*.[3] The prosecutor's arguments were improper, because they were an unwarranted personal attack on defendant's trial attorney. *See State v. Lundbom,* 96 Or App 458, 773 P2d 11 (1989). However, a trial court has discretion to determine whether to grant a mistrial, and we reverse only if it was likely that the jury drew an improper inference from the prosecutor's comments. *State v. Madison,* 93 Or App 182, 187, 760 P2d 1384 (1988).

At trial, defendant gave an explanation different from the one that she had given before the indictment to an investigator. In the prosecutor's opening argument, he emphasized the inconsistency and stated:

> "So in here we don't hear anything about this money was money for school. And that this money belonged to the husband and that she had spent that. *I submit that was created to attempt to exculpate her from charges* because what this statement is, in State's Exhibit No. 18, is a confession to unlawfully obtaining public assistance. This is a confession to the crime. *After talking to her attorney, her attorney here figured, out, 'huh, well, we want to have a trial. We need to change some of these things.'* So you see what happens between 1982 and trial this week.
>
> "The other thing that statement doesn't say is that 'some welfare worker told me it was okay not to report that.' *I submit that was made up for this trial* because if that was the case, she thought she didn't have to report it, she certainly

---

[3] Counsel argued:

"There is a book called Anatomy of a Murder. And I don't know all the details of the book, but I heard one of the foremost defense attorneys in our community talking about this book and about the defense of criminal case [sic] and how it might go. And parts of this book, as I recall, it is somebody charged with murder. The defense attorney gets the reports and all the discovery. You have discovery. That is one of the rules of the system is that the State gives to the defense all the evidence they have so there is [sic] no surprises. So the defense attorney reads all this stuff. Doesn't tell me anything now. I read the stuff. We read the instructions — the reports. I look at all the evidence. Read their stuff. 'Now, if it happens this way, this way, and this way, if that's what happened, I think you are going to be convicted. If it happened this way and this way and this way, I think you might be found, you might have a chance. Come back in two days, tell me what happened.' "

would have told them in 1982 about that." (Emphasis supplied.)

In his closing argument, defense counsel argued:

"[L]adies and gentlemen of the jury. At 10:21 a.m. this morning something happened in this courtroom that you will never see again in the courtroom. If you stay on jury duty until 1999, you will never see another lawyer walk over to counsel table and accuse another lawyer of sitting down with the client and making up a perjured defense. Using Mr. Feldman's words, it may have nothing whatsoever to do with this case. And may have everything to do with this case. I will leave it up to you to determine what weight to give it."

By not objecting to the prosecutor's initial statements and by electing to comment on the issue in his closing argument, defendant's trial counsel accepted the tone set for the arguments. Defendant cannot now successfully argue that the jury drew an improper inference from the prosecutor's remarks when both counsel had raised the issue previously without objection. *See Richmond v. Fields Chevrolet Co.,* 261 Or 186, 202-04, 493 P2d 154 (1972); *State v. Schwab,* 95 Or App 593, 595-96, 771 P2d 277 (1989).

Affirmed.