Submitted March 26, affirmed October 15, 2014, petition for review denied
February 5, 2015 (356 Or 689)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JESUS IGNACIO BERRELLEZ,
*Defendant-Appellant.*

Jackson County Circuit Court
034917FE; A151431

337 P3d 964

Peter Gartlan, Chief Defender, and Neil F. Byl, Deputy
Public Defender, Office of Public Defense Services, filed the
brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce,
Solicitor General, and Karla H. Ferrall, Assistant Attorney
General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and
Edmonds, Senior Judge.

DEVORE, J.

**DEVORE, J.**

Defendant appeals a judgment of conviction for one count of first-degree sexual abuse, ORS 163.427. We reject without discussion his challenge to the constitutionality of nonunanimous jury verdicts. Defendant also challenges the trial court's denial of his motion to dismiss, arguing that the state violated his statutory and constitutional rights to a speedy trial.[1] We review the denial of his motion for legal error. *State v. Glushko/Little*, 351 Or 297, 305, 266 P3d 50 (2011); *State v. Rohlfing*, 155 Or App 127, 129, 963 P2d 87 (1998). "If we find that the evidence in the record sustains the trial court's factual findings, we do not disturb them." *State v. Powell*, 352 Or 210, 212, 282 P3d 845 (2012) (citing *State v. Foster*, 303 Or 518, 529, 739 P2d 1032 (1987)). To the extent that the trial court did not make explicit factual findings, we presume that the trial court decided the facts consistently with its conclusions. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We affirm.

The relevant facts are not in dispute. In September 2001, eight-year-old J told her mother that defendant, the mother's boyfriend, had come into her room at night, closed and locked the door, and touched her vaginal area while J pretended to be asleep. In early October, Detective Ronald Walch received the report alleging defendant's conduct. A few weeks later, J participated in a video-recorded interview with Walch and Claudia Eliasen, a Child Advocacy Center employee, to discuss and recount the incident. Thereafter, J moved out of the state and did not return until 2003.[2] In the meantime, defendant had learned of J's allegation before the police report was filed, and he fled.

Defendant was indicted on October 6, 2003, after J became available to testify before a grand jury in Oregon.[3] No one was able to tell Walch where defendant had gone.

---

[1] Although defendant raises a Sixth Amendment issue, that issue was not preserved for appeal.

[2] Eliasen died before defendant's trial. The date is not in evidence. Defendant filed a pretrial motion to exclude evidence of the interview, and that motion mentioned that Eliasen died on January 25, 2004.

[3] Walch testified that, between 2001 and 2003, it was the district attorney's policy that victims in child abuse cases testify before the grand jury.

J's mother thought that he could be in California or Mexico. Upon issuance of the indictment, Walch issued an all-states arrest warrant through the Law Enforcement Data System (LEDS) and National Crime Information Center. Sometime during 2003, Walch received information, with a phone number and address, suggesting that defendant was in Los Angeles, California. Walch engaged the Los Angeles County Sheriff's Office to attempt to arrest and extradite defendant, but the attempt failed. The sheriff's office surveyed the home for some time and eventually contacted a woman living there, who identified herself as defendant's wife. Defendant was not present at the time. Shortly thereafter, both defendant and the woman disappeared. Walch did not have other leads as to defendant's whereabouts. He thought that defendant may have gone to Mexico and asked J's mother to keep him apprised of new information. Eventually, defendant was arrested and arraigned in November 2011.[4]

Walch retired some years before defendant's arrest. During a routine purge of his old files, Walch destroyed between four and six pages of notes that he had taken during the investigation. The pages included notes from the recorded interview with J and from his search for defendant. The "master case file," however, was unaffected; that file preserved all "official" police case reports and the recorded interview of J. Walch testified that any "substantive" evidence from his notes was preserved because they were incorporated into the master case file.

Defendant's trial was scheduled for January 2012. Defendant filed a motion to dismiss for lack of a speedy trial, asserting his statutory and state constitutional rights under *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1, and Article I, section 10, of the Oregon Constitution. Defendant argued that an eight-year delay was presumptively prejudicial and unreasonable. Defendant added that, under a constitutional analysis, he had met his burden to demonstrate prejudice, because Eliasen had died and could not be called as a witness, and Walch's notes had

---

[4] The record does not indicate where defendant was eventually arrested. In a pretrial hearing, the prosecutor remarked that authorities learned of defendant's location and caused him to be extradited to Oregon. The prosecutor believed defendant had been found in Nevada.

been destroyed during the delay. The trial court denied the motion. The court concluded that the delay was not unreasonable, given defendant's unknown location and the state's effort to find him, and that defendant did not suffer prejudice from the unavailability of Eliasen as a witness or the destruction of Walch's notes.

We begin with the question of whether defendant was brought to trial within a reasonable period of time as required by *former* ORS 135.747 (2011).[5] That statute provided that, "[i]f a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

We review the trial court's decision under a two-step analysis. First, we "determine the relevant amount of delay by subtracting from the total delay any periods of delay that defendant requested or consented to." *Glushko/Little*, 351 Or at 305. In this case, the state concedes that the first step of that analysis is not relevant, because defendant did not consent or apply for any of the delay. Therefore, we consider the entirety of the delay beginning with the date of the indictment, October 6, 2003, and ending with the date of trial—a period spanning approximately eight and one-half years. *See State v. Johnson*, 339 Or 69, 93, 116 P3d 879 (2005) ("clock" begins with indictment or accusatory instrument); *State v. Davis*, 236 Or App 99, 107-08, 237 P3d 835 (2010) ("clock" ends with date of trial).

Second, we must make a record-specific inquiry concerning whether that delay was reasonable, given the totality of the circumstances. *Glushko/Little*, 351 Or at 305; *State v. Hinkle*, 225 Or App 347, 351, 201 P3d 250, *rev den*, 346 Or 364 (2009). We consider all attendant circumstances and weigh several factors, including "the reasons for the delay, the length of the total delay attributable to the state, and the length of any portion of the delay that was unjustified."

---

[5] As we concluded in *State v. Straughan (A147718)*, 263 Or App 225, 235, 327 P3d 1172 (2014), the repeal provision does not apply to pending appeals from cases in which the trial court denied defendants' motions to dismiss under *former* ORS 135.747.

*State v. Myers*, 225 Or App 666, 667, 202 P3d 238, *rev den*, 346 Or 184 (2009); *see also State v. Garcia/Jackson*, 207 Or App 438, 444, 142 P3d 501 (2006).

> "Because it is the state's obligation to bring a defendant to trial within a reasonable time, it is the state's burden to show the reasonableness of any delay * * * [and] [w]here the state fails to show, on the record, justified reasons for a delay, the delay is deemed to be unreasonable."

*Davis*, 236 Or App at 110.

In terms of *former* ORS 135.747, we conclude that the trial court did not err in determining that the delay in this case was reasonable. Delays caused by a defendant's evasion of law enforcement typically are reasonable, especially where the state had entered information into LEDS and has no knowledge of the defendant's out-of-state whereabouts. *See State v. Pirouzkar*, 98 Or App 741, 744 n 2, 780 P2d 802 (1989), *rev den*, 309 Or 333 (1990); *Hinkle*, 225 Or App at 353. In *Hinkle*, we observed that, by entering a warrant into LEDS, the state presumably put law enforcement agencies on notice of an outstanding warrant and that, by leaving the state after learning of the allegation, the defendant made it difficult for the state to execute the warrant. *Id.* Such facts are distinct from situations in which delays are caused by insufficient state resources or crowded dockets. *Johnson*, 339 Or at 89.

In this case, defendant had learned of the accusation and disappeared. He disappeared seemingly twice. The second disappearance happened a short time after Los Angeles deputies made an attempt to contact defendant at his home and spoke with a woman claiming to be his wife. The record indicates that the Oregon police had no leads as to defendant's whereabouts and had already issued an all-states warrant in LEDS. Given our case law and defendant's disappearances, there is nothing more the state was required to do up to the point of defendant's arrest.[6] The

---

[6] After defendant's arraignment, November 10, 2011, and before defendant's trial, April 19, 2012, the parties appeared for multiple hearings. Defendant's trial was initially scheduled for January 2012. The parties do not debate the delay due to those interim proceedings, and defendant focuses his argument on the length of time prior to his arraignment. We do not consider that the period of pretrial preparation apparent in this case produced an unreasonable delay. *See State v.*

record is sufficient to support the trial court's determination that the delay was reasonable. The trial court did not err.

In terms of the state constitution, we conclude that the delay in this case did not run afoul of defendant's right to a speedy trial.[7] The right to a speedy trial serves important interests. The guarantee "serves both a defendant's interest in a speedy trial and the public's interest in the prompt administration of justice." *State v. Harberts*, 331 Or 72, 83, 11 P3d 641 (2000). We consider three factors: the length of the delay, the reasons for the delay, and the resulting prejudice to defendant. *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987). "[T]he length of the delay is a 'triggering mechanism'—that is, '[i]f the time taken to bring an accused to trial is substantially greater than the average, inquiry into the remaining two factors is triggered.'" *State v. Bayer*, 229 Or App 267, 279, 211 P3d 327, *rev den*, 347 Or 446 (2009) (quoting *Mende*, 304 Or at 23-24). We consider the weight or relevance of each factor, including the length of the delay as an "element of the inquiry[.]" *Harberts*, 331 Or at 87-88. "Delay alone can violate a defendant's right to justice without delay if it is so long that it shocks the conscience or if the state purposely caused the delay to hamper the defense." *State v. McDonnell*, 343 Or 557, 572, 176 P3d 1236 (2007).

The state concedes, and we agree, that a delay extending over eight years between indictment and trial is excessive and requires careful review of the other two factors: the reason for the delay and the resulting prejudice. We have already discussed the reasons for the delay in this case. The remaining factor for review is the resulting prejudice. The Supreme Court has recognized at least three kinds of prejudice: "(1) the damage from lengthy pretrial incarceration; (2) anxiety and concern resulting from public accusation of a crime; and (3) impairment of the ability to defend at trial." *Id.* at 573-74 (citing *Harberts*, 331 Or at 93). Defendant's arguments, rejected by the trial court, focused on the third form of prejudice. Defendant contends that he suffered prejudice from two impairments to his ability to

---

*Cupp*, 257 Or App 652, 662, 307 P3d 531 (2013) (concluding that a relatively short period of delay represented a reasonable length of time to schedule a trial date).

[7] Article I, section 10, provides, "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay * * *."

properly defend—that is, Eliasen's death and the destruction of four to six pages of Walch's notes.[8]

We review for a "reasonable possibility of prejudice to the defense." *Id.* at 574 (internal quotation marks omitted). With regard to defendant's first alleged impairment, the lost opportunity to examine Eliasen is satisfactorily mitigated by the fact that the interview was video recorded and by the fact that Walch participated in the interview and was available as a witness at trial. Neither party presented evidence demonstrating that Eliasen had any additional, unrecorded contact with J. Eliasen's death deprived defendant of the chance for cross-examination, but it did not deprive defendant of the chance to see the interview anew and elicit criticism of any failures or oversights in the interview by means of an expert's review. Indeed, at trial, defendant took the opportunity to challenge evidence in the recorded interview by calling an expert witness to testify about child interview techniques in sexual abuse cases, generally, and about her criticisms of the way J was interviewed. In sum, "the record contains no evidence confirming that the deceased [person] would have supplied any useful information or, particularly, that that information would support defendant's arguments[.]" *Id.* at 575.

Regarding defendant's second alleged impairment, we are not persuaded that defendant would have benefitted from any exculpatory evidence in Walch's notes. Given that the substance of those notes was preserved through incorporation in the master case file, which was presumably provided to defendant, there is not a reasonable possibility that the absence of those notes impaired defendant's ability to defend. Defendant has not demonstrated that the delay in his case created a reasonable possibility of prejudice to his ability to defend at trial.

In light of the reasons for the delay and the absence of prejudice to the defense in this case, we conclude that the trial court did not err in denying the motion to dismiss. We affirm.

Affirmed.

---

[8] Defendant also alleges that the state failed to "transfer responsibility for the case" after Walch's retirement in 2007. There is no evidence in the record supporting that argument.