Argued and submitted April 6, 2021, affirmed March 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HARLEY DAVID DIAZ MELECIO,
aka Harley David Diaz Melicio,
*Defendant-Appellant.*

Lane County Circuit Court
16CR60002; A171031

507 P3d 764

Defendant appeals a judgment of conviction for giving false information to a peace officer, resisting arrest, interfering with a peace officer, and second-degree criminal trespass. In his first and second assignments of error, defendant contends that the state did not timely commence his prosecution because it unreasonably delayed in executing his warrant and that the state failed to bring him to trial within the required time frame. In his third and fourth assignments of error, he asserts that the trial court incorrectly denied his motion to suppress and his motion for judgment of acquittal on the second-degree criminal trespass offense. *Held*: First, under the totality of the circumstances of this case, the state's delay in executing the warrant was reasonable. Second, given that defendant's location could not have been determined in an exercise of due diligence, the state did not violate defendant's speedy trial rights by failing to bring him to trial within two years. The trial court therefore did not err by denying defendant's motions to dismiss on either of those bases. Third, the trial court did not err by denying defendant's motion to suppress, because the arresting officer had reasonable suspicion that defendant was on property that was not open to the public. Lastly, the evidence was sufficient for a rational trier of fact to find that the criminal trespass elements were satisfied, and the trial court thus did not err by denying defendant's motion for judgment of acquittal.

Affirmed.

Charles M. Zennaché, Judge.

Daniel C. Bennett argued the cause for appellant. Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Erin J. Snyder Severe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Joyce, Judge, and DeVore, Senior Judge.*

JOYCE, J.

Affirmed.

_____

* Joyce, J., *vice* DeHoog, J. pro tempore.

**JOYCE, J.**

Defendant appeals a judgment of conviction for giving false information to a peace officer, resisting arrest, interfering with a peace officer, and second-degree criminal trespass, raising four assignments of error.[1] In his first and second assignments of error, he contends that the state did not timely commence his prosecution because it unreasonably delayed in executing his warrant and that the state failed to bring him to trial within the required time frame. In his third and fourth assignments of error, he asserts that the trial court incorrectly denied his motion to suppress and his motion for judgment of acquittal on the second-degree criminal trespass offense. We affirm.

## BASIC FACTS

Defendant's claims of error implicate different relevant facts and different standards of review. We therefore briefly describe the basic facts here and provide additional facts below as appliable to the relevant assignment of error.

Police arrested defendant in January 2016 in Lane County after an officer found defendant in a rural area on property owned by the University of Oregon. The officer believed that defendant was trespassing. After an encounter with the officer, the state charged defendant with giving false information to a peace officer, resisting arrest, interfering with a peace officer, and second-degree criminal trespass, all misdemeanor offenses. Because defendant later failed to appear at a pretrial conference, the state issued a warrant for his arrest. The state entered the warrant into the Law Enforcement Database Systems (LEDS). Officers arrested defendant over two years later. A jury later convicted him of each of the charged crimes.

## MOTION TO DISMISS FOR UNTIMELY PROSECUTION

In his first assignment of error, defendant maintains that the state failed to execute the warrant without "unreasonable delay" as ORS 131.125 and ORS 131.135

---

[1] At oral argument, defendant withdrew his fifth assignment of error because he acknowledged that the trial court had in fact given the jury concurrence instruction that defendant sought. We therefore do not address it.

require, and that the trial court erred by denying his motion to dismiss for untimely prosecution. We review for legal error, accepting the trial court's findings of fact if there is evidence in the record to support them. *State v. Washington*, 266 Or App 133, 148, 337 P3d 859 (2014), *rev den*, 356 Or 767 (2015).

The facts relevant to this claim of error are as follows. After his arrest, the court arraigned defendant and released him. At the time of his release, defendant did not provide the court with an address. Defendant subsequently failed to appear for a pretrial hearing. The trial court later dismissed the charges on the state's motion pending "further investigation."

In September 2016, the state filed a new information with the same charges. The trial court issued a warrant for defendant's arrest. Following the issuance of the warrant, the state entered the warrant into LEDS. Police did not arrest defendant until nearly two and a half years later, in January 2019. At the time of his arrest, defendant also had pending charges in Multnomah County. He told the Multnomah County Circuit Court at his arraignment there that he lived outside and had for some time.

Defendant moved to dismiss the charges on the ground that the state unreasonably delayed in executing the warrant in violation of ORS 131.135. ORS 131.125(8)(b) provides that prosecution for misdemeanors "must be commenced" within two years. ORS 131.135 in turn defines when a prosecution is considered "commenced." It provides that a prosecution "is commenced when a warrant or other process is issued, provided that the warrant or other process is executed without unreasonable delay." Defendant argued that the state had done nothing more to execute the warrant other than entering it into LEDS and that that single action failed to meet the state's burden under ORS 131.135 to execute the warrant without unreasonable delay.

The trial court denied the motion. The trial court concluded that given the circumstances of the case—namely, that the state did not know of defendant's location because

he lacked a fixed address—the delay in executing the warrant was not unreasonable.

On appeal, the parties make the same arguments as they did below. We agree with the state that the trial court did not err. Whether delay in executing a warrant is unreasonable depends on the totality of the circumstances. *State v. Jackson*, 228 Or 371, 377, 365 P2d 294 (1961) ("[I]t is such length of time as may reasonably be allowed or required having regard to attending circumstances."); *see also State v. Hinkle*, 225 Or App 347, 351, 201 P3d 250, *rev den*, 346 Or 364 (2009) (whether a delay is "reasonable" for purposes of ORS 131.135 is a totality of the circumstances inquiry). Our previous cases provide some guidance, although—as with many totality of the circumstances inquiries—none are directly on point. Where the state knows of a defendant's location and takes no action to execute the warrant, the state has engaged in unreasonable delay. *State v. Barnes*, 66 Or App 896, 900, 676 P2d 344 (1984). Likewise, a delay is unreasonable if the state does not know a defendant's location, but the state can find the defendant with minimal effort. *State v. Huskey*, 171 Or App 550, 554, 17 P3d 541 (2000). Recently, in *State v. Chase*, 317 Or App 561, 567-68, 506 P3d 443 (2022), we concluded that where the defendant had resided at the same address in the state for the entire time of the delay at issue (57 months) yet the state took no action to attempt to execute the warrant at that address, the delay was unreasonable. That was true even though the state had entered the defendant's warrant into LEDS and sent the defendant a letter informing her of her arraignment. *Id.* at 568.

In contrast, we have concluded that a delay is reasonable where the state served a warrant on the defendant's last known address (which was vacant), did not know where the defendant currently lived, and had entered the warrant into "the law enforcement computer systems." *State v. Pirouzkar*, 98 Or App 741, 744, 780 P2d 802 (1989), *rev den*, 309 Or 333 (1990). And in *Hinkle*, we concluded that the delay in execution of the warrant was not unreasonable where the defendant was on notice of the charges against him and of the requirement to appear, the state had entered

the warrant into the database, and the defendant had moved to California for a period of time. 225 Or App at 253-54.

Those cases demonstrate that a critical factor in determining whether a delay is reasonable is whether the state knew of or could have discovered the defendant's location with minimal effort. That critical factor is ultimately dispositive here. As the trial court found, defendant did not have a fixed address. Thus, this is not a case like *Barnes*, *Huskey*, or *Chase*, where the state knew of the defendant's location or could have found it with minimal effort. The state entered defendant's warrant into LEDS to alert law enforcement that defendant had a warrant. *Pirouzkar*, 98 Or App at 744 n 2 ("[B]y entering the warrant information into the law enforcement computer systems *** after the warrants were issued, the state took action to further the prosecution.").[2] Beyond entering the warrant into LEDS, it is unclear what reasonable efforts the state could or should have undertaken to execute the warrant without unreasonable delay. The state was without the most basic of information needed to locate defendant and its failure to do so cannot, in the totality of the circumstances of this case, be deemed unreasonable delay.

To be clear, we are not holding that, as a *per se* matter, the state does not have to do anything beyond entering a warrant into LEDS when the defendant is a houseless person. If, for instance, the state has information of a prior address or specific areas in which a defendant may be located, those circumstances might dictate that the state do more to locate a defendant under ORS 131.135. But where, as here, the state had no information about where defendant might be located, the state satisfied ORS 131.135 by entering the warrant into LEDS to notify law enforcement of that warrant.

---

[2] Defendant argues that our decision in *Pirouzkar* was wrong to the extent that it factored in the defendant's absence from the state into the unreasonable delay analysis. In defendant's view, ORS 131.135 requires focus *solely* on the state's conduct, not defendant's. That proposition is doubtful, in light of our prior holdings that we examine "*any* circumstances" that explain the passage of time. *Barnes*, 66 Or App at 899 (emphasis added). But in all events, as the state correctly argues, "the state's efforts must be evaluated in light of the particular circumstances of each case[,] including whether the state can reasonably ascertain the defendant's whereabouts."

MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL

In his second assignment of error, defendant argues that the state violated his speedy trial rights by failing to bring him to trial within two years, and that the trial court erred by denying his motion to dismiss on that basis. ORS 135.746 requires the state to bring a defendant to trial within two years, but the period of time "during which the defendant's location is unknown and * * * cannot be determined by due diligence" is excluded from that time period. ORS 135.748(1)(e)(B). We again review for legal error, *State v. McGee*, 295 Or App 801, 806, 437 P3d 238, *rev den*, 365 Or 194 (2019), and conclude that the trial court correctly concluded that the state did not fail to exercise due diligence in finding defendant, and, therefore, the state did not violate the speedy trial statutes.

Below, the parties agreed that the state had not brought defendant to trial within two years; the dispute thus focused on whether the state had failed to exercise due diligence in finding defendant. The arguments mirrored the ones made with respect to whether the state had failed to execute the warrant with unreasonable delay. For his part, defendant maintained that the state did not take any action to locate defendant, and the state countered by noting that, given the lack of knowledge of defendant's whereabouts, the state exercised as much diligence as it could in the circumstances by entering the warrant into LEDS. The trial court agreed with the state and denied defendant's motion.

That claim of error rises (and ultimately falls) on what constitutes "due diligence." As both parties note, due diligence is a legal term of art that has been described as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *SAIF v. Kurcin*, 334 Or 399, 407, 50 P3d 1167 (2002) (citing *Black's Law Dictionary*, 468 (7th ed 1999)).[3]

---

[3] To be sure, that definition comes from the workers' compensation context. But because the term is a legal term of art and the court in *Kurcin* drew upon the dictionary definition of that term, we agree with the parties that that definition is applicable in the criminal context as well.

Applying that definition here, we conclude that the trial court correctly ruled that defendant's location could not have been determined in an exercise of due diligence. Again, given that defendant had no fixed address, the state did not—and could not—know where defendant was located, and no reasonable way existed of finding out. Given those facts, the state exercised the amount of diligence reasonably expected in the circumstances, which was entering the warrant into LEDS. Where there is no evidence of a defendant's whereabouts other than that the defendant might be in one of two large counties, due diligence does not require the state to, in essence, search for a needle in a haystack. To conclude as much would require extraordinary efforts, not "reasonable efforts" as the due diligence standard requires.

Moreover, contrary to defendant's argument, nothing in the legislative history of ORS 135.748 indicates that the legislature intended to depart from how due diligence, a legal term of art, has typically been defined (and how defendant agrees the term is defined). To the contrary, at least one committee counsel noted that the term "due diligence" has appeared in over 500 Oregon appellate decisions, so "it's a term that courts are very familiar with." Audio Recording, House Committee on Judiciary, SB 1550, Feb 24, 2014, at 1:24:50 (statement of committee counsel Bill Taylor), https:// olis.oregonlegislature.gov (accessed Mar 9, 2022);[4] *see also OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) (court decisions that existed at the time the legislature enacted a statute may be consulted in determining what the legislature intended in enacting the law). The legislative history thus does not compel a different conclusion.

We therefore affirm the trial court's denial of defendant's motion to dismiss.

## MOTION TO SUPPRESS

Before trial, defendant moved to suppress evidence that resulted from his interactions with the arresting officer,

---

[4] There was some discussion among the committee about how the term "due diligence" would operate in the context of the amendments. Audio Recording, House Committee on Judiciary, SB 1550, Feb 24, 2014, at 1:07:53 (statement of District Attorney Josh Marquis), https://olis.oregonlegislature.gov (accessed Mar 9, 2022). That discussion appears to have been resolved after the comment that Oregon courts are very familiar with the term.

arguing that the officer lacked reasonable suspicion to seize him. He argues that the trial court erred in denying that motion. We review the denial of a motion to suppress for errors of law. *State v. Voyles*, 280 Or App 579, 581, 382 P3d 583, *rev den*, 360 Or 751 (2016). We are bound by the trial court's factual findings, so long as they are supported by constitutionally sufficient evidence, and, if findings were not made on all pertinent historical facts, we presume findings consistent with the trial court's ultimate conclusion. *Id.*

As relevant to this claim of error, Officer Phillips encountered defendant on property owned by the University of Oregon. The property is privately owned. The property has two points of entrance, both of which are located on Union Pacific property. One entrance—the one used by about 95 percent of the people accessing the property—is clearly marked with a no trespassing sign. The second entrance is also "very, very clearly marked" as belonging to Union Pacific. In other words, it "would be impossible" to come through that entrance without knowing that one was "at least" trespassing on Union Pacific property. Phillips observed defendant lying in a wooded portion of the university property. Phillips believed, among other things, that defendant was trespassing on the privately owned university property.

Defendant moved to suppress evidence discovered as a result of what he argued was an unlawful seizure. He argued that the state had failed to meet its burden of proving that the university property was not open to the public, as required by the criminal trespass statute. *See* ORS 164.245(1) (a person commits second-degree criminal trespass when the person "enters or remains unlawfully * * * in or upon premises"); *see also* ORS 164.205(6) (defining "premises" as including "any real property, whether privately or publicly owned"); ORS 164.205(3)(a) (a person enters or remains unlawfully when "the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so"). More particularly, defendant asserted that it was unclear whether the no trespassing signs applied to the university's property, as opposed to the Union Pacific property.

The trial court denied the motion to suppress. It concluded that the officer had reasonable suspicion that defendant was trespassing because the property is not generally open to the public. It found that the property is accessed only by two ways, both of which are "marked in some way saying No Trespassing and that the property by its very nature is remote and not something that's generally open to the public." The court thus concluded that Phillips had both a subjective and objectively reasonable belief that defendant had committed criminal trespass.

On appeal, defendant challenges the trial court's conclusion that Phillips's belief that defendant had trespassed was objectively reasonable.[5] In light of the trial court's factual findings, there is no legal error. As noted, the trial court found that the university property was accessible one of two ways, both of which made it clear that the property was not open to the public. Although defendant maintains that nothing about the *university* property would have "conveyed to a reasonable person that permission to enter was required," that argument is contrary to the trial court's findings—supported by the record—that the Union Pacific property was not open to the public. Based on those facts, the trial court properly determined that it was objectively reasonable for Phillips to believe that the adjacent university property, which could only be accessed through the Union Pacific property, was not open to the public and that defendant had committed criminal trespass. We therefore affirm the trial court's denial of defendant's motion to suppress.

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant's final motion was for a judgment of acquittal on the second-degree criminal trespass charge, which the trial court denied. In resolving that assignment of error, we must determine whether, after viewing the evidence and all reasonable inferences in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

---

[5] Defendant also argues that the state did not have objectively reasonable suspicion for other crimes. Because the trial court's ruling did not rest on the officer's suspicion of those other offenses, we do not address them.

*State v. Colpo*, 305 Or App 690, 691, 472 P3d 277, *rev den*, 367 Or 290 (2020).

At the close of the state's case, defendant moved for a judgment of acquittal on several bases. As relevant to this claim of error, defendant moved for an acquittal on the criminal trespass charge. His argument was premised on similar grounds to his motion to suppress: He argued that no rational trier of fact could have found the elements of criminal trespass to be present because no evidence was present that the university property was not open to the public. ORS 164.245(1); ORS 164.205(3)(a), (4) (so requiring). The state argued that the evidence was sufficient for the jury to find that the elements of second-degree criminal trespass were met. The trial court denied the motion, concluding that the state had presented evidence from which a jury could find that element present.

On appeal, defendant relies on the same argument he made below. We agree with the state that the evidence was sufficient here. Framed in the light most favorable to the state, a rational trier of fact could have found that the essential elements of criminal trespass were present.[6] As described above, an officer found defendant located on property that was accessible one of two ways, both of which made it clear that the property was not open to the public. Those facts would allow a rational trier of fact to find that the criminal trespass elements were satisfied and the trial court thus correctly denied defendant's motion for judgment of acquittal.

Affirmed.

---

[6] Both parties agree that Officer Phillip's testimony at trial was consistent with his testimony at the motion to suppress hearing.